UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


ERICA WILLIS TANKS, AS ADMINISTRATOR
OF THE ESTATE OF THOMAS WILLIS, AS
PERSONAL REPRESENTATIVE OF THOMAS
WILLIS FOR THE BENEFIT OF ALL HEIRS
OF THOMAS WILLIS, AND AS NATURAL
DAUGHTER OF THOMAS WILLIS                          PLAINTIFF


VS.                          CIVIL ACTION NO. 4:05CV183TSL-LRA


NEAS, INC. AND PSYCHOLOGY ASSOCIATES, LLC.            DEFENDANTS


MEMORANDUM OPINION AND ORDER

     This cause is before the court on the separate motions of

defendants NEAS, Inc. and Psychology Associates, Inc. for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  Plaintiff Erica Willis Tanks, who brought this action

as administrator of the Estate of Thomas Willis, as personal

representative of Thomas Willis for the benefit of all heirs of

Thomas Willis, and as natural daughter of Thomas Willis, has

responded in opposition to the motions, and the court, having

considered the memoranda of authorities, together with

attachments, submitted by the parties, concludes that the motion

of Psychology Associates should be granted and that of NEAS should

be denied, for reasons which follow.

     On July 8, 2003, Doug Williams, an employee of Lockheed

Martin at its plant in Meridian, Mississippi, went on a shooting

rampage at the plant, during which he killed or wounded a number

of his co-workers, including Thomas Willis, and then killed

himself.  According to plaintiff, Williams' rampage was
foreseeable, and could have been prevented but for negligence by
defendants herein, which had been engaged some eighteen months
prior to this tragedy to evaluate Williams' potential for violence
in the workplace.

Facts

In December 2001, Lockheed was informed by an employee of a
confrontation between two other employees, a white man, Doug
Williams, and a black man, Aaron Hopson, in which Williams
threatened to "kill a bunch of niggers" and then kill himself.
Lockheed commenced an investigation of the incident, led by Darryl
Sawyer from the company's EEO department in Marietta, Georgia.
Sawyer's investigation uncovered information that not only had
Williams threatened Hopson, but on a prior occasion in which he
was upset over having been laid off, he had threatened to get his
rifle and "pick off" employees as they left the plant.

Lockheed ostensibly took the Hopson situation seriously, and
determined that Williams should be required to attend counseling
as a result of his actions and that his continued employment at
Lockheed would be contingent on his satisfactory completion of
such counseling.  Lockheed thus contacted NEAS, a company with
which Lockheed had contracted as its "Employee Assistance
Provider" (EAP), regarding Williams and made a mandatory referral
of Williams to NEAS for counseling.[1]  After speaking with

---

[1]     Uunder the Employee Assistance Program Services
Agreement between NEAS and Lockheed, NEAS was given "the sole

production manager, Jack Johns, and with Doug Williams, NEAS referred Williams to a local counselor, Jennifer Whitcomb, a partner with Psychology Associates, a local company with which NEAS had in place an Affiliate Agreement for the purpose of providing counseling services.  After three counseling sessions with Williams, Whitcomb notified NEAS and Lockheed in January 2002 that Williams had complied with the counseling requirement. Although neither defendant had any further involvement with Williams, or was ever informed by Lockheed of any further concerns regarding Williams prior to his deadly rampage in July 2003, plaintiff has sued them for negligence/gross negligence alleging that their failure to appropriately evaluate Williams for the risk he posed to others in the workplace, and to Thomas Willis in particular, and their consequent failure to take steps to eliminate that risk (as, for example, by recommending either removal of Williams from the workplace or close monitoring of Williams' actions and prompt responsive action in the event of another episode), proximately contributed to the events of July 8, 2003 and the death of Thomas Willis.

Defendants' Motions

Defendants urge a number of common grounds for dismissal. Both defendants contend that plaintiff's complaint must be

---

authority to make determinations on behalf of the Employer with respect to services covered" by the contract, which "services" included telephone intake, assessment and crisis counseling; face-to-fact assessment and counseling; short term counseling; referral to community providers and resources, and management consultation.

dismissed because (1) her claims are in substance for medical malpractice and yet she failed to comply with the mandatory presuit notice requirement of Mississippi Code Annotated § 15-1-36(15) and the required certificate of expert consultation in accordance with Mississippi Code Annotated § 11-1-58; (2) her claim was not timely filed in accordance with the two-year statute of limitations applicable to cause of action for medical malpractice, Mississippi Code Annotated § 15-1-36 (3) defendants had no legal duty to Thomas Willis to protect him from harm at the hands of Doug Williams; and (4) even if there were such a duty, plaintiff cannot establish that a breach of that duty was the proximate cause of Thomas Willis's death.  In addition, Psychology Associates also argues that even if a legal duty could be found to exist, plaintiff cannot succeed on her claim against this defendant because she cannot establish that Psychology Associates breached any such duty.

Psychology Associates

The facts pertaining to Psychology Associates' involvement with Doug Williams are not disputed.[2]  On December 8, 2001, Doug Williams got into a "heated discussion" with Aaron Hopson, a black co-worker, in which Williams threatened to kill Hopson, and stated he would go into the plant and "kill a bunch of niggers, then I'm

---

[2]     Because the court is of the opinion that plaintiff has presented insufficient evidence to create a triable issue on her claims against Psychology Associates, the court, for purposes of streamlining its discussion, will pretermit discussion of the strictly legal arguments advanced by this defendant for dismissal.

going to kill myself."  Williams was upset because he thought
Hopson had propositioned a white woman, Phyllis Huffmaster, and
Williams was opposed to black men associating with white women.
Pete Threat, another black employee, reported the incident to
production supervisor Jeff McWilliams, who in turn informed Jack
Johns about the incident.  Johns made a preliminary investigation,
following which he contacted Lockheed's EEO department in
Marietta, Georgia about the incident.

Donald Sawyer, with the Marietta office, undertook a formal
investigation in which he interviewed a number of persons about
this Hopson incident and about Doug Williams in general.  In
addition to speaking to management officials, Sawyer interviewed
Hopson, Williams, Threat and Huffmaster, along with two other
black employees, Thomas Willis and Lynette McCall.  As reflected
in the notes of his investigation, Sawyer learned from Thomas
Willis that in addition to the threats made by Williams during the
Hopson incident, which Willis reported included a threat to "bust
a cap" in Aaron Hopson, there had been a previous occasion some
years earlier when Williams, who had been laid off, remarked that
he should "get his rifle and pick off employees as they leave the
plant."  Lynette McCall, who is black, reported that Williams had
been upset because he thought Hopson was interested in Huffmaster;
Williams, she told Sawyer, had made comments to her, McCall, from
time to time, expressing his belief that blacks and whites

"shouldn't mix," that he saw "a race war coming," and remarking to her that she, McCall, was "on [his] list, too."[3]

Sawyer recommended that Williams be referred for counseling, as a condition of his continued employment, and indicated in his investigation notes that Williams should be "seen by someone who can evaluate his potential to be violent."  Consistent with this recommendation, Williams was referred to NEAS for counseling and, as noted, NEAS in turn referred Williams to Psychology Associates.  However, Psychology Associates was not requested by NEAS to evaluate Williams' potential for violence, or asked to perform a "fitness for duty" evaluation of Doug Williams.  Rather, NEAS simply referred Williams to Psychology Associates for counseling to address what were described as "boundary/communication issues."  In connection with the referral, Psychology Associates was told, in the words of counselor Jennifer Whitcomb, "just that there were conflicts and communication problems, . . . [t]hat he was not getting along with other employees, . . . and there was tension and discomfort."  Psychology Associates was not told about the death threats by Williams, both in the Hopson incident and previously, or of Williams' racial attitudes and hostilities, and it was not told that Lockheed had concerns about whether it was safe for Williams to be in the workplace.  Moreover, NEAS did not discuss with Psychology Associates any need for a "fitness for duty" evaluation.  As a result of these omissions by NEAS,

_____

[3]   McCall was shot and killed by Williams during the shooting rampage.

Whitcomb did not evaluate Williams for any danger in the workplace but instead provided counseling to Williams "to deal with common issues and anger management."

Plaintiff, particularly through the testimony of her expert, Dr. Robert Phillips, has acknowledged that NEAS failed to provide Psychology Associates with sufficient information to enable Psychology Associates to "appropriately provide clinical service that was necessary."[4]  Dr. Phillips thus has not criticized the services provided by Psychology Associates in light of the information known to that defendant.  As Dr. Phillips acknowledged throughout his testimony, based on the information she was provided and the fact that she did not have the benefit of full disclosure of information regarding Doug Williams' racial threats and hostilities, Ms. Whitcomb's evaluation "focused simply on an interpersonal conflict between two employees."  She simply "did not have information . . . that would have suggested that this conflict between these two individuals was not merely your garden variety, I don't like the guy, or I don't like the fact that he is dating someone."  She was, in short, "clueless" that there "was much more charge to this circumstance."

---

[4]    There is some dispute in the record as to precisely what information was conveyed to NEAS by Lockheed in connection with the referral of Williams; but it is clear that NEAS was informed of the specifics of the Aaron Hopson incident and advised that Williams had previously been laid off and threatened to "pick off" coworkers, and it was made known that Williams was taking anxiety medications.  Inexplicably, this information was not shared with Psychology Associates.

Plaintiff contends, however, that Psychology Associates was negligent for failing to make inquiry into the reason for Doug Williams' referral and for failing to conduct an assessment of Doug Williams' risk (though the latter failure, she observes, was a natural consequence of the former[5]).  On the former claim, Dr. Phillips opined that there was a "failure on the part of Psychology Associates to ask certain follow-up questions on at least what Ms. Whitcomb indicates as her intake information."  He testified:

> In her intake notes, she immediately indicates that it is a management referral.  He was threatening to a counselor – to a co-worker who is of a different race.
> It goes on down a path of what I think she believed is going on, or what has been transmitted.  I think she did not follow the kinds of things that are outlined in [NEAS] documents that would have allowed her to further inquire and get information, both from Mr. Williams and from the company as to what this means.
> And I think your (NEAS's) manual is very clear about how sort of a two prong approach to gathering that information.  And if she is not allowed to get it directly from the company, then the inquiry should have come from her.[6]  When I say the company, I mean

---

[5]   Plaintiff argues, "A risk assessment requires the counselor to obtain factual information concerning Doug Williams' reason for referral.  Treatment without this step was clinically deficient."

[6]   Plaintiff has faulted Psychology Associates for choosing to "rel[y] solely on the information provided by NEAS and the accused Williams who had a great reason to lie."  Yet it appears from the evidence that the arrangement between NEAS and Psychology Associates prevented Psychology Associates from seeking information directly from NEAS's client, Lockheed, so that Psychology Associates was forced to rely solely on information provided by NEAS.  On this point, Dr. Phillips testified:
> The secondary problem as one looks at this clinically, and it is codified in [NEAS's] manuals, and that is that the end point treater can't talk to the company.  I don't understand that.  I don't understand that, because

      Lockheed.  She should have asked those questions of you,
you being NEAS.
. . .
If Psychological Associates is a provider of that
company (NEAS), and the providers of that company are
expected to have the kinds of skills and training that
an employer is to rely upon when the referral is made,
and the provider does not ask the kinds of questions
that are consistent with, again, not only what the
providers in this company are trained to think and
conceptualize, but what should be asked, then that is a
failure as well.

This is the entirety of Dr. Phillips' testimony regarding

Psychology Associates.

      In the court's view, this testimony is too vague, unspecific

and conclusory to create a jury issue on plaintiff's claims

against this defendant.  Dr. Phillips does not identify what

"intake information" should have prompted additional inquiry by

Whitcomb, other than the facts that Williams was a "management

referral" who had threatened a co-worker; yet there is nothing to

indicate that the information provided by NEAS should have alerted

Psychology Associates to the fact that this was anything other

than a "garden variety" interpersonal conflict between two

employees of the type routinely addressed through employee

counseling.  Psychology Associates could and should reasonably

have assumed that if NEAS had information indicating that Williams

had made specific racial threats against his co-worker(s), and

---

      anybody who is doing risk evaluation is always going to
talk to the employer, talk to the employer to get
information and get data.  By design, the clinician is
precluded from doing that, so [NEAS] [is] forcing the
clinician to rely on [NEAS] to provide that information.

certainly if it had information that he had threatened to kill his
co-worker(s) and then kill himself, NEAS would have shared this
information with Psychology Associates.  Indeed, Psychology
Associates was entitled to assume that NEAS would have informed
Psychology Associates of any information it had which indicated
that Williams might pose a general or specific risk of harm to
himself or others.  This is not the kind of detail Psychology
Associates should reasonably have expected NEAS to omit in its
referral of Williams for counseling.  Unless there was something
specific in the information provided by NEAS to indicate a need
for inquiry–and nothing specific has been identified[7]–the court

---

[7]    Although plaintiff states throughout her response brief
that Psychology Associates was informed that Doug Williams had
made "racial threats" to a coworker, that is not an accurate
representation of the record.  She states, for example,

> The very least of what Psychology Associates was told
> was that the referral was for an interpersonal workplace
> confrontation in which racial threats were made.

In fact, Whitcomb was not told there had been a "racial threat."
Rather, as Dr. Phillips clearly pointed out in his deposition,
Whitcomb testified without contradiction that she was not aware of
the facts of the racial threats and death threats:

> Her notes indicate that she was aware that there
> were threatening comments made to a co-worker who was of
> a different race.
> This in and of itself may not apply, that the
> threats were derivative or arose from a racial issue.
> The fact that two co-workers of a different race
> get into an altercation and a threat is made, doesn't
> per se mean it is racially motivated.
> I think she was aware that there was, there were
> threatening comments made.  She is aware that the other
> party was of a different race than Mr. Williams, but she
> testified that she was not aware of the nature of the
> threats being racial, or that any of the threats
> involved death.

perceives no basis for this defendant to have assumed there was
something more involved than appeared on its face.  For this
reason, the court concludes that Psychology Associates is entitled
to summary judgment.

        NEAS

        NEAS argues that since allegations in plaintiff's complaint
and the opinions offered by her expert manifest an intention to
hold it to a medical and/or psychiatric standard of care, then
plaintiff's claim is essentially a medical malpractice action and
therefore must be dismissed because plaintiff failed to give sixty
days' written notice of her intent to sue, as required by
Mississippi Code Annotated § 15-1-36(15),[8] see Arceo v. Tollivar,
949 So. 2d 691, 694 (Miss. 2006) (holding dismissal was mandatory
where the plaintiff "wholly failed to provide any written notice
to any medical provider concerning her intention to commence
suit"); Pitalo v. GPCH-GP, Inc., 933 So. 2d 927, 929 (Miss. 2006)
(affirming dismissal based on the plaintiff's failure to send
notice of intent to sue, as such failure "clearly violates the
mandatory instructions concerning notice"), or to provide the
expert certification required by Mississippi Code Annotated

_____

        [8]   That statute provides:
        No action based upon the health care provider's
        professional negligence may be begun unless the
        defendant has been given at least sixty (60) days' prior
        written notice of the intention to begin the action.  No
        particular form of notice is required, but it shall
        notify the defendant of the legal basis of the claim and
        the type of loss sustained, including with specificity
        the nature of the injuries suffered.
Miss. Code Ann. § 15-1-36(15).

                                11

§ 11-1-58,[9] see Tolliver v. Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo, 2007 WL 2034622, at 5 n.2 (Miss. Ct. App. July 17, 2007) (observing that dismissal was warranted for failure to comply with § 11-1-58).

Plaintiff herein does not deny that she did not give defendant prior written notice of her intent to sue or that her complaint was not accompanied by a certificate of expert consultation. She maintains, however, that these requirements are inapplicable because the Estate is suing based on ordinary negligence principles, not for medical malpractice; because NEAS did not perform medical/psychiatric services on Doug Williams; because NEAS is not a "health care provider" within the contemplation of these statutes; and because there was no physician-patient relationship between Thomas Willis and NEAS.

As plaintiff notes, "[n]ot every claim for negligence against a healthcare provider constitutes malpractice." Perkins v. Susan B. Allen Mem. Hosp., 146 P.3d 1102, 1107 (Kan. Ct. App. 2006). See also Harrier v. Oakwood Skilled Nursing Center-Trenton, 2007 WL 914628, *1 (Mich. Ct. App. 2007) (stating that "not every claim

---

[9]    That statute states that "[i]n any action against a licensed physician, health care provider or health care practitioner for injuries or wrongful death arising out of the course of a medical, surgical or other professional services where expert testimony is required by law," the complaint must be accompanied by a certified from the plaintiff's attorney declaring that he has consulted with at least expert who is qualified to give an opinion on the standard of care, and that the attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of the suit.  Miss. Code Ann. § 11-1-58.

that involves medical treatment is a medical malpractice claim"). And, because many states have specialized rules for the prosecution of medical malpractice claims, courts are often called on to determine the proper classification of a claim as one sounding in ordinary negligence or medical malpractice. "The difference between a medical malpractice claim and a claim for other types of negligence depends entirely on the nature of the alleged wrongful conduct." Perkins, 36 Kan. App. 2d at 890-891, 146 P.3d at 1107.  If the claim is for an injury caused by something other than a medical misjudgment, as, for example, administrative decisions, the claim is said to be one of ordinary negligence.  See Canas v. Al-Jabi, 282 Ga. App. 764, 639 S.E.2d 494, (Ga. Ct. App. 2006) ("Essentially, when 'the decisive factor in the injury forming the basis' of a plaintiff's complaint 'was not a medical misjudgment,' the claim is for ordinary negligence.") (citations omitted); see also Iodice v. United States, 289 F.3d 270, 276 (4th Cir. 2002) (stating that "when a negligence claim against a health care provider does not 'arise out' of the 'furnishing' of 'professional services,' it is not a medical malpractice claim, but rather may be brought as an ordinary negligence claim."); Blanton v. Moses H. Cone Mem'l Hosp., Inc., 354 S.E.2d 455 (N.C. 1987) (holding that a failure to monitor performance of on-staff physicians did not constitute medical negligence).

In her response to NEAS's motion, plaintiff maintains that NEAS's principal function on behalf of Lockheed was not to itself

13

provide medical services, but rather to provide risk management/
assessment services.[10]  She insists that NEAS never performed any
medical/psychiatric services for Lockheed's employees, including
Doug Williams, and that none of her claims against NEAS,
therefore, could possibly be based on any medical function which
NEAS performed or failed to perform; rather, her claims against
this defendant are based on its alleged negligence in the
performance of administrative functions, namely, its alleged
failure to perform a minimal investigation into the reasons for
Williams' referral for mandatory counseling; failure to perform or
facilitate the performance of a competent and minimally adequate
risk assessment of Williams; failure to refer Williams to a
medical professional who was qualified to perform the necessary
and appropriate risk assessment; failure to provide essential
information to the counselor hired to perform counseling on
Williams; and failure to inform Lockheed of the necessity to
perform a "fitness for duty" evaluation.  Plaintiff points out
that consistent with the relationship between Lockheed and NEAS,
in cases such as Williams', and in Williams' case in particular,
NEAS was simply an investigative and information source, a "middle
man" between Lockheed and the end-point healthcare provider, and
that its function in this regard was simply to gather information,

---

[10]     She points out, in fact, that NEAS has purported to have
expertise in this area, as evidenced by the fact that it has
published a manual on risk assessment, and performs training
seminars to instruct companies on conflict management and
preventing violence, and provides training on preventing workplace
violence.

assess the need for services and type of services needed, and to
then distribute information to both Lockheed and Psychology
Associates.

Having considered the parties' arguments, the court finds
merit in plaintiff's position and readily concludes that
plaintiff's claims against NEAS are for ordinary negligence, not
malpractice.  Accordingly, the court rejects NEAS's arguments that
her claims are barred due to her failure to give presuit notice or
to file an expert certification with her complaint.  The court
also concludes, for the same reason, that her claims are not
governed by the two-year statute of limitations applicable to
causes of action for medical malpractice, but rather are governed
by the residual three-year statute of limitations of Mississippi
Code Annotated § 15-1-49, under which her claims were timely
filed.[11]

NEAS next argues that even if the court were to determine
that plaintiff's claims do not fall under Mississippi's medical
malpractice statutes, her claims still must fail as a matter of
law because she cannot establish an essential element of her
claim, namely, the existence of a legal duty to Thomas Willis to

---

[11]   NEAS has moved to strike the testimony of plaintiff's
expert, Robert Phillips, arguing that to the extent he has offered
testimony that defendants breached some general (i.e., nonmedical)
standard of care, expert testimony is not required so that his
testimony is irrelevant; and to the extent he has offered
testimony that NEAS breached a medical standard of care, his
testimony is irrelevant if the court concludes this is not a
medical malpractice case.  The court has considered the motion,
and plaintiff's response, and concludes that the motion is not
well taken and should be denied.

protect him from harm at the hands of Doug Williams.  See Century
21 Deep South Properties, Ltd. v. Corson, 612 So. 2d 359, 368
(Miss. 1992) (stating that "before one can be found negligent he
must owe a duty to the injured party").  NEAS insists that it owed
a duty only to Lockheed, Doug Williams and Psychology Associates,
and that no duty was owed to Thomas Willis, with whom it never had
any contact or dealings of any sort.

Although there do not appear to be any Mississippi cases on
point, the prevailing rule appears to be that generally, there is
"no duty to control the conduct of another in order to protect a
third person from harm," but exceptions are recognized in
situations "where there is . . . a special relationship between
two persons which gives the one a definite control over the
actions of the other" or "a special relationship exists which
imposes a duty upon one to control the actions of another," "where
a special relationship gives a third person a right to
protection."  E.g., Peck v. Counseling Service of Addison County,
Inc., 146 Vt. 61, 64-65, 499 A.2d 422, 424-425 (Vt. 1985) (citing,
among other sources, Restatement (Second) of Torts §§ 315, 319).
Moreover, most courts considering the issue have held that where a
mental health professional is aware that a patient poses a risk of
harm to a s specific third party, that third party has a right to
protection.  See Peck, 146 Vt. at 63, 499 A.2d at 423 (holding
that "a mental health professional has a duty to take reasonable
steps to protect third persons from threatened physical harm posed
to them by his or her patient").

16

A conclusion that Mississippi would likely ascribe to this view is supported by Mississippi Code Annotated § 41-21-97, which states:

> The hospital records of and information pertaining to patients at treatment facilities or patients being treated by physicians, psychologists, licensed master social workers or licensed professional counselors shall be confidential and shall be released only: (e) when the patient has communicated to the treating physician, psychologist, master social worker or licensed professional counselor an actual threat of physical violence against a clearly identified or reasonably identifiable potential victim or victims, and then the treating physician, psychologist master social worker or licensed professional counselor may communicate the threat only to the potential victim or victims, a law enforcement agency, or the parent or guardian of a minor who is identified as a potential victim.

NEAS implicitly acknowledges that there may be a common law duty to protect a third party when there has been a specific threat against an identified or reasonably identifiable person, and explicitly concedes that under this statute, counselors may have a duty to third parties in the circumstance described, i.e., when the patient has communicated "an actual threat of physical violence against a clearly identified or reasonably identifiable potential victim or victims." But it submits that the rationale for such liability does not support finding that a duty was owed to Thomas Willis, a third party victim, because NEAS had "no control over Williams, and Williams' acts were completely unforeseeable (to NEAS) at the time." Indeed, it argues, Williams certainly never disclosed either to NEAS or Psychology Associates any threat of any nature, and while Lockheed had information regarding threats by Williams, which involved black employees of

17

Lockheed in general and a number of specific black employees, including Thomas Willis, Lockheed failed to share this specific information with NEAS, which was therefore not aware of direct threats of violence made by Doug Williams targeted at any specific person.

In the court's opinion, however, the evidence of record is adequate to create a question for the jury on the questions of whether NEAS should have been aware of Williams' threats and whether, in light of such information, it should have reasonably foreseen Williams' deadly attack.[12]

Likewise, while NEAS contends otherwise, the court, having reviewed the evidence of record, is of the opinion that there is sufficient evidence in the record to create a triable issue on the question of causation.  The fact that some eighteen months passed between NEAS's involvement with Williams and the Williams shooting incident is certainly a factor that bears on the issue of causation; but the court does not consider the passage of time alone to foreclose jury consideration of the issue in this case.[13]

---

[12]   Burchfield v. United States, on which NEAS relies, provides no guidance here, for the court there merely found that under the facts of that case, there was no duty to the "random victim of [the patient's] unforeseeable attack."  750 F. Supp. 1312, 1319 (S.D. Miss. 1990).

[13]   NEAS argues that Williams' attack was a "superceding, intervening case" which precludes a finding that any act or omission by NEAS was a proximate cause of injury to Thomas Willis. That is, it contends that the very act which plaintiff contends was reasonably foreseeable was itself a superceding intervening cause.  The court is not persuaded.  By definition, "'an independent intervening cause is one that could not have been reasonably foreseen by the defendant while exercising due care.'"

Conclusion

Based on the foregoing, it is ordered that the motion of Psychology Associates for summary judgment is granted, and the motion of NEAS for summary judgment is denied.

SO ORDERED this 21st day of September, 2007.


                                    /s/ Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE

---

O'Cain v. Harvey Freeman & Sons, Inc., 603 So.2d 824, 830 (Miss. 1991) (quoting Kelly v. Retzer & Retzer, Inc., 417 So. 2d 556, 562 (Miss. 1982)).  Moreover, as the Mississippi Supreme Court has observed, "the question of superceding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such an issue would not be one for the trier of fact."  Id.